```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------   X
                                                             :
  CICELY LITTLEJOHN,                                         :    **MEMORANDUM**
                                                             :    **DECISION AND ORDER**
                                     Plaintiff,              :
                                                             :    16-CV-3380(BMC)
                - against -                                  :
                                                             :
  CAROLYN W. COLVIN,                                         :
                                                             :
                                     Defendant.              :
----------------------------------------------------------   X
```

**COGAN**, District Judge.

Plaintiff seeks judicial review of the determination of the Commissioner of Social Security, following a hearing before an Administrative Law Judge ("ALJ"), awarding her partial disability benefits. The ALJ found that plaintiff was not disabled as of her alleged onset date – November 17, 2011 (the "early period") – as she had sufficient residual functional capacity to do sedentary work with significant limitations. However, the ALJ found that she became disabled as of October 8, 2013 (the "later period"), which was still within her insured period.

Plaintiff was a New York City Corrections Officer who broke her ankle very badly, specifically, a fracture on each side of the ankle, in a slip and fall accident at work on September 14, 2010. Her ankle was set and two weeks later, she underwent surgery to install ten screws and a metal plate to stabilize the ankle. She was in a wheelchair for about three months after the surgery and was then on crutches until June 2011. She has used a cane since that time. At the time of her hearing before the ALJ (September 2, 2014), she was anticipating another surgery to remove the hardware.

Both sides agree that the case should be remanded. Plaintiff contends that the case should be remanded only for a calculation of benefits as to the early period because there is no substantial evidence that could support a finding that she was not disabled as of November 17, 2011. Alternatively, plaintiff contends that the case should be remanded for a re-evaluation of the evidence as to the early period. Of course, in either case, plaintiff wants the remand confined to the early period, and to leave the finding of disability as to the later period undisturbed.

The Commissioner's position is that the case should be remanded as to both the early and the later period. The Commissioner contends that the ALJ erred as to the determination of non-disability for the early period; however, the only error that the Commissioner alleges is the following:

> [T]he ALJ did not properly assess testimony regarding the limiting effects of [plaintiff's] symptoms. Plaintiff testified that due to chronic ankle pain, she had to change position every ten minutes (i.e., could neither sit nor stand for more than ten minutes at a time). Plaintiff also stated that she walked with a cane. Notably, the record reflects that a cane had been prescribed. Yet, in determining Plaintiff's RFC, the ALJ does not discuss these limitations or the need for a cane.

As to the later period, the Commissioner contends that the ALJ's finding of disability also needs to be remanded because the ALJ erroneously based his finding on a diagnosis of peripheral neuropathy made on February 24, 2014. That diagnosis, the Commissioner urges, merely provided the objective basis for plaintiff's complaint of numbness and tingling in her toes, a complaint that plaintiff had made as far back as December 2010, and it continued unabated thereafter. Therefore, the Commissioner argues, the ALJ could not have found that petitioner's condition "worsened" as of October 2013, which the Commissioner claims was necessary to find her disabled.

I think the Commissioner has it backwards. If the ALJ had found that plaintiff was disabled for both the early and later periods, no one could criticize that finding, as there is plenty

2

of evidence that would support it. The Commissioner does not dispute that plaintiff had peripheral neuropathy and tarsal tunnel syndrome in February 2014, as was proven by an EMG and found by her treating physician. That testing and diagnosis is clearly sufficient to support plaintiff's description of her symptoms, and all the medical evidence favorable to her prior to that date, which in turn would be more than adequate to support a finding of disability.

Of course, the diagnosis of peripheral neuropathy with tarsal tunnel syndrome did not spring like Athena from Zeus' head. These are progressive conditions, and if she had them in February 2014, she had at least aspects of its symptomology for some time prior. The ALJ somewhat arbitrarily picked four months prior because that was when plaintiff started treatment with the orthopedist who arrived at the diagnosis on the basis of the EMG, but the ALJ discounted that orthopedist's opinion that her impairment left too little functional capacity to work as far back as her alleged onset date. Thus, the real question is, with a clear disability date of February 2014, how far back does the disability go?

I do not see the Commissioner's allegations of errors committed by the ALJ as material. First, the use of a cane has little or no bearing on how long plaintiff can sit – which is the issue here – and thus remanding the case so that the ALJ could specifically comment on her use of a cane would serve no purpose. Moreover, the ALJ was clearly aware of her need for assistance in ambulation as he noted that plaintiff "used a cane, which had been prescribed by her orthopedist in 2011." I therefore cannot see remanding the case as to the early period for that.

Second, I see no need to remand the case as to the earlier period so that the ALJ can make a specific reference to plaintiff's testimony that she has to change position every ten minutes, as the Commissioner argues. It must be noted that in making an adverse credibility finding as to plaintiff, the ALJ not only included the boilerplate language ("the undersigned finds

3

that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible prior to October 8, 2013 …"), but he offered a specific example of why he was making this finding.

That is not to say that I think the basis for the ALJ's adverse credibility determination was adequate. The specific example he gave to justify the finding was that Dr. Howard Baum, an orthopedic consultant of plaintiff's choosing (not a state orthopedic consultant), had found in 2012 that although plaintiff's loss of motion in the ankle and her toe numbness were permanent, and she could not resume her position as a Corrections Officer, she could do light duty for her employer if she was sitting. However, Dr. Baum did not opine on how long she could sit, and he was also clear that he wanted plaintiff to have additional surgery. In addition, as Dr. Baum noted, plaintiff told Dr. Baum that she needed the money and wanted to try to return to work in any capacity. Read in its totality, Dr. Baum's report is merely stating that she could try. I thus see nothing in Dr. Baum's report that would support the ALJ's finding that plaintiff was not sufficiently credible as to the early period, but was sufficiently credible as to the later period.

Putting aside plaintiff's credibility, the important point is that the Commissioner is seizing on alleged "errors" committed by the ALJ even though, in other cases, the Commissioner takes the position that similar omissions by the ALJ do not warrant remand. See, e.g., Avera v. Colvin, No. 15-cv-1253, 2017 WL 473842 (E.D.N.Y. Feb. 3, 2017) (Commissioner opposed remand even though "the ALJ gave no precise reason for disregarding . . . [the plaintiff's] medical need for a cane"); Koch v. Comm'r of Soc. Sec., 14-CV-4755, 2016 WL 1273238 (E.D.N.Y. March 30, 2016) (Commissioner opposed remand where the ALJ omitted from her credibility analysis certain activities that the plaintiff stated she couldn't do, but accounted for

4

activities the plaintiff stated she could do); Kennedy v. Astrue, 09-CV-00143, 2010 WL 3338620 (N.D.N.Y. June 14, 2010) (Commissioner opposed remand where, in assessing the plaintiff's credibility, the ALJ failed to mention a majority of the plaintiff's testimony regarding her significant difficulty in performing daily activities). This leads me to conclude that the Commissioner has searched the record for some arguable error as to the early period solely for the purpose of justifying remand as to the later period. In effect, the Commissioner is seeking reversal of the favorable decision of the ALJ and the Appeals Council.

The Commissioner's stand-alone argument as to the later period is similarly unpersuasive. There is no requirement in the regulations that an ALJ find a "worsening" of a condition to select a later onset date than the one claimant asserts. Such a worsening can be one justification for picking a particular date, but it would be equally plausible, in a hypothetical case, for an ALJ to find insufficient evidence of disability before a certain date, and to still find disability based on the addition of later-generated evidence that reflects a later date. See Trombetta v. Chater, No. 95 Civ. 3216, 1997 WL 4573 (S.D.N.Y. Jan. 7, 1997) (affirming the ALJ's finding that the plaintiff was disabled as of 1992, but was not disabled prior to that date, because there was no substantial evidence that the plaintiff's symptoms began prior to 1992).

In fact, although the Commissioner tries to minimize the additional evidence by referring to it as a mere diagnosis, the doctor who made the diagnosis of peripheral neuropathy and tarsal tunnel syndrome during the later period, Dr. Timur Hanan, rendered a detailed medical source statement after performing nerve conduction studies, which, together, constitute perhaps the strongest evidence of disability in the record. And as the ALJ noted, the evaluation of Dr. Chaim Shtock, made at the behest of the Commissioner, strongly suggested that plaintiff was disabled during the later period.

5

Based upon this evidence, and all of the other evidence in the record from both periods, I have no difficulty upholding the ALJ's determination that plaintiff was disabled as of the commencement of the later period. There was more than substantial evidence to support it and the Commissioner does not have the right to seek review of a favorable determination. The case will therefore be remanded only for consideration of the early period.

The remaining question is whether the remand that both parties request should be for an award of benefits-only, or a re-evaluation of the record. The standard, in effect, is whether the record is so one sided that an ALJ's finding of non-disability could not be upheld as based upon substantial evidence. See Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998).

This is a fairly close question, but on balance, the limited evidence that the Commissioner cites for a re-evaluation as opposed to a benefits-only remand is mostly unpersuasive. First, the Commissioner cites the fact that on January 10, 2012, plaintiff told Dr. Mark Eberle that she needed money and wanted to return, in some capacity, to the Corrections Department, even though she knew that she could not resume her guard duties. It seems to me that this cuts in favor of a finding of disability, not against it, as plaintiff had a well-established, uninterrupted work record in more than one job. See, e.g., Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983) ("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability."); Bradley v. Colvin, 110 F. Supp. 3d 429, 447 (E.D.N.Y. 2015) (same). It is disingenuous to argue that the desire to return to work can be held against a claimant with a good work record who seeks disability benefits. Desire to work does not equal ability to work, and a lack of sloth in the context of a disability application should usually result in commendation, not condemnation.

It would be one thing if plaintiff said she could perform a sedentary job because she regularly sits comfortably for six hours a day, but plaintiff has said the opposite of that to every physician who asked the question. Plaintiff is not an expert who could have assessed whether she had sufficient functional capacity to perform sedentary work as would be required to work for the Corrections Department. She may simply have been overly optimistic about her ability to work in light of her desire to work. The fact that she went back and tried to work, and then had to stop after a few months, according to her, because of her impairment, tends to suggest that she was not exaggerating her symptoms.

For the same reason, the Commissioner's reliance on Dr. Baum's statement that she could do "light duty" – an evaluation which, in any event, the ALJ gave only "little weight" because it "was a one-time evaluation rendered within the purview of the Worker's Compensation law" – has little probative value. The report clearly reads as validating plaintiff's desire to try to return to work. The most that can be said of the report is that it was not entirely clear to Dr. Baum that plaintiff could not do a sedentary job, and thus he wasn't going to preclude her from trying.

The Commissioner also cites a report by Dr. Paul Ackerman from December 12, 2011, a couple of months after plaintiff unsuccessfully attempted to return to work and fifteen months after her surgery, that plaintiff walked without a limp. It does, at least, raise some question as to whether plaintiff was disabled on that date, but I frankly do not understand Dr. Ackerman's observation. He says that despite having ten screws and a metal plate holding her ankle together after shattering it fifteen months earlier, plaintiff had no limp. I do not see how that is possible, but I recognize I am not a doctor. I can only note that Dr. Ackerman had referred plaintiff for x-rays less than two months earlier, and the radiologist found bone spurs, degeneration of the ankle

7

bones, swelling, and loss of the arch in the foot. It seems improbable to me that plaintiff, who, in October 2012, had one flat foot and a host of other ankle problems, didn't have any limp two months later in December 2012. And, in fact, the findings of plaintiff's treating physician, Dr. Mark Eberle, contradict those of Dr. Ackerman. Only six days prior to Dr. Ackerman's observation of "no limp," Dr. Eberle observed that plaintiff did have a limp, which he continued to note existed for months after that. Dr. Ackerman's observation clearly occupies an isolated place in this record.

The only other evidence that the Commissioner cites in support of a re-evaluation remand is that of Dr. Shtock. Ironically, the Commissioner here argues that Dr. Shtock's opinion shows non-disability, but the ALJ placed "significant weight" on Dr. Shtock's opinion as showing disability during the later period – although Dr. Shtock himself placed no temporal limitation on his evaluation. As the Commissioner notes in his brief, there is a material inconsistency in Dr. Shtock's evaluation. In his narrative, Dr. Shtock stated that he found that plaintiff had moderate-to-marked limitations on frequent stair climbing and standing for long periods, moderate limitations on heavy lifting and squatting, and mild limitations on crouching, but that plaintiff had no limitation on sitting for long periods. Yet in his Medical Source Statement, Dr. Shtock indicates that plaintiff could only stay seated for 45 minutes at a time, and could not sit more than four hours in an eight-hour workday. It seems to me that this inconsistency renders his opinion of no value as to the early period.

In determining whether to remand for a re-evaluation or a benefits-only calculation, I also note that the ALJ placed "significant weight" on the conclusions of a State Agency Medical consultant, Dr. Murari Bijpuria, even though all Dr. Bijpuria did was review records. The Commissioner, however, does not offer Dr. Bijpuria's views as a reason to remand for a re-

evaluation. The ALJ credited Dr. Bijpuria's findings, in part, because of the "specificity of her explanations." In fact, they were not very specific; his (or her) [1] opinions were mainly conclusory. Dr. Bijpuria filled out a Residual Functional Capacity Assessment form, which is a simple checkbox form, but he left blank most of the questions that called for a narrative expansion on the checked answer.

The ALJ also credited Dr. Bijpuria because of his "specialty," but he is only a general surgeon, not an orthopedist, rheumatologist, or physical medicine specialist like plaintiff's treating physicians. Perhaps the reason that the Commissioner does not rely on Dr. Bijpuria's opinion in this review proceeding is that there is a significant amount of case law holding that not too much weight should be given to a consultant who has merely examined patient records and not even met, let alone examined, the patient. See, e.g., Vargas v. Sullivan, 898 F.2d 293, 295-96 (2d Cir. 1990) ("The general rule is that the written reports of medical advisors who have not personally examined the claimant deserve little weight . . . .") (internal quotation marks omitted); Savage v. Colvin, No. 15-CV-5774, 2017 WL 776088, at * 10 (E.D.N.Y. Feb. 28, 2017) ("[T]he opinions of consultative and non-examining physicians are entitled to comparatively little weight.").

That brings us, then, to plaintiff's main point, which is that the ALJ improperly discounted plaintiff's treating physicians. The ALJ's decision was clearly imbalanced in this regard. In finding non-disability, he relied primarily on Dr. Shtock, who examined her once, and Dr. Bijpuria, who didn't examine her at all. The ALJ gave "little weight" to Dr. Hanan, purportedly because he had only treated plaintiff four times between October 8, 2013, and February 24, 2014.

---

[1] I think "Murari" is generally a male name but perhaps the ALJ knew better.

9

First, four times is four times as many as the one time that Dr. Shtock saw her, and four times more than Dr. Bijpuria, who didn't even meet her. Secondly, the ALJ was wrong. Plaintiff had been receiving treatment from Dr. Hanan at least as early as June 11, 2012. In fact, he has as long a treatment relationship with her as anybody else. If the ALJ was going to use the commencement of treatment with Dr. Hanan as the onset date – which he did, although mistaking it as October 8, 2013 – then the onset date should have been at least June 11, 2012.

The ALJ gave even shorter, or more erroneous, shrift to plaintiff's other treating physicians. The treating physicians who had the longest combined treating relationship with plaintiff were Dr. Leo Batash and his partners, Dr. Maia Batash and Dr. Mark Eberle, of the Continental Medical Group. They started treating her shortly after her surgery in 2010, and continued until she transitioned to Dr. Hanan in June, 2012. The ALJ gave Dr. Leo Batash's opinion "little weight" because Dr. Leo Batash made a "one-time evaluation," which was rendered pursuant to the Worker's Compensation law. The ALJ's statement that Dr. Leo Batash made a "one-time evaluation" was just flat out wrong; there are treatment notes showing that plaintiff had at least three sessions with Dr. Leo Batash from shortly post-surgery through January 13, 2011. From February 2011 to March 2011, plaintiff saw Dr. Maia Batash, who reported that plaintiff's ankle was still swollen and opined that plaintiff was 100% impaired. In April 2011, plaintiff began to see Dr. Eberle, who treated plaintiff on many occasions and generated significant treatment notes. The ALJ, however, made no reference to either Dr. Maia Batash or Dr. Eberle.

These are not the only treating physicians that plaintiff had and the ALJ either ignored or virtually ignored; there were several others. I am not going to recount their names and findings except to note that the overwhelming thrust of their evaluations was entirely consistent with

10

plaintiff's subjective complaints. To be sure, it is possible to cherry-pick isolated references out of a few of them that arguably support a finding of non-disability, and to the extent the ALJ referred to them, that is essentially what he did, but that is a practice which the case law recognizes is contrary to objective analysis. See Aviles v. Comm'r of Soc. Sec., 15 Civ. 2992, 2016 WL 1642645, at *5 (E.D.N.Y. April 25, 2016); Anderson v. Astrue, No. 07-CV-4969, 2009 WL 2824584, at *10 (E.D.N.Y. Aug. 28, 2009); cf. Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983) ("Although we do not require that, in rejecting a claim of disability, an ALJ must reconcile explicitly every conflicting shred of medical testimony, we cannot accept an unreasoned rejection of all the medical evidence in a claimant's favor). Without exception, plaintiff's physicians were all specialists in physical medicine or rheumatology whose opinions were entitled to far more consideration than the ALJ gave them. Their evaluations are remarkably consistent.

Resting a functional capacity determination upon the internally inconsistent report of one medical consultant (Dr. Shtock); the opinion of a doctor who performed one records-only review (Dr. Bijpuria); isolated snippets from some treating physicians; and a short gap period when plaintiff tried and failed to resume work is simply insufficient. When Dr. Hanan received the results of the EMG, which showed that plaintiff had a condition that was more than sufficient to establish disability, that was the icing on the cake. Indeed, it confirmed what plaintiff had been saying to her multiple treating physicians all along.

I see no way that this record could support a finding of non-disability. There is no substantial evidence on which it could be based unless one were to ignore the abundant contrary findings of several specialists who examined plaintiff most frequently and most in-depth. The

case is therefore remanded for the determination of benefits-only from the onset date of November 17, 2011.

## CONCLUSION

Plaintiff's motion for judgment on the pleadings is granted. Defendant's motion for judgment on the pleadings is denied. The Clerk is directed to enter judgment, remanding plaintiff's claim only for a determination of benefits from November 17, 2011.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       March 18, 2017